VANDIVER TEAGUE *v.* WM. S. TEAGUE and MOSES TEAGUE, Executo.s, &c., and others,

A devised as follows: (1.) I will and bequeath to my beloved wife, M. B. T., forty acres of land, including the house and buildings, during her natural life, then to be equally divided between my three youngest daughters, to wit: * * * * * * I also will and bequeath all the rest of my tract of lan 1 that I now live on, known as the Newland land to my three youngest daughters, * * * * * * to be equally divided. (2.) That all the rest of my land, with the exception of the lai d where my son W. S. T. lives, that land the said W. must pay for, what I pa d without interest, then my executors to make him a deed, to be sold. and my daughter N. A's heirs to have fifty dollars each, the balance to be divided *among my other heirs.* (3.) I also will that my three sons. V , W. and M:, account to my estate what money they owe me without interest, and have three hundred and fifty dollars each out of that money, and all the rest of my property to be sold and equally divided among my nine heirs;" *Held,* 1. It appearing that the testator owned several tracts of land adjoining the home place, and which had been used as one tract for thirty years, and was conveyed to him as one tract, known as the Newland land, the same constituted but one tract. and passed to the three youngest daughters, subject to the life estate of their mother.

2. That the words "my other heirs," excludes the three youngest daughters from all benefit under that clause of the will, and that N. A's heirs take nothing under said clause except the legacy of fifty dollars, to be paid out of the fund arising from the sale of the land. That the name of W. S. T. was only mentioned in order to direct that he should pay for the land on which he lived, and thereby increase the fund out of which he was to draw as one of "my other heirs;" meaning other than the three youngest daughters.

3. That although some of the debts due from his sons to the testator were barred by the statute of limitations, they must be paid before the sons owing them can claim any benefit under the will.

CIVIL ACTION, tried before *Furches, J*, at Fall Term, 1875, of the Superior Court of ALEXANDER county.

The complaint alleged: That Vandiver Teague, Sr., died in the county of Alexander in the month of March, 1872,

leaving a last will and testament in which he appointed the defendants, William S. Teague and Moses Teague, his executors.

The following is a copy of said will:

" In the name of God, Amen: I, Vandiver Teague, Sr., being of sound mind and disposing memory, blessed be God, do make and ordain this my last will and testament, to-wit:

First: I will and bequeath to my beloved wife, Mary B. Teague, forty acres of land, including the house and buildings, during her natural life time, then to be equally divided between my three youngest daughters, to-wit: Sophronia J. Teague, Elizabeth Montgomery and Amanda L. Teague. I also will and bequeath to my beloved wife one years' plentiful provisions; also two choice cows and calves and four head of sheep, one sow and pigs and hogs enough for a killing, also all the household and kitchen furniture, with the exception of two desks and one bureau. And I will her one mare, all the farming tools and one wagon and gear. I also will and bequeath all the rest of my tract of land, that I now live on, known as the Newland land, to my three youngest daughters, Sophronia J. Teague, Elizabeth A. Montgomery and Amanda L. Teague, to be equally divided. I also will and bequeath to my daughter, Sophronia J. Teague, a mule called Jim, which she is now in possession of, and I also will to my youngest daughter, Amanda L. Teague, a horse beast, to be worth one hundred dollars in gold, likewise three head of cattle apiece, and I will to Sophronia five head of sheep, and to Amanda nine head of sheep. I also will that all the rest of my land, with the exception of the land where my son, William S. Teague, now lives, that land the said William must pay for what I paid, without interest, then my executors to make him a deed, to be sold, and my daughter, Nancy Austin's heirs to have fifty dollars each, the balance to be divided among my other heirs. I will that my three sons, Vandiver, William and Moses, account to my estate for what money they

owe me, without interest, and have three hundred and fifty dollars each out of that money, and all the rest of my property to be sold and equally divided among my nine heirs, my wife an equal heir. I also ordain and appoint my two sons, William and Moses, my executors in this, my last will and testament.

N. B. I will that my wife, Mary B. Teague, and her four daughters have all the money accruing from the estate of Jas. H. Newland, deceased.

In testimony whereof, I have hereunto set my hand and affixed my seal, March the 19th, 1866.

·his

(Signed)    VANDIVER ⋈ TEAGUE.  [SEAL.]

mark.

·Witness :

    his

JOSEPH ⋈ DYSON,

    mark.

A. B. OXFORD,

·W. D. MARSHALL.

The said executors qualified and entered into the discharge of their duties on the 13th of April, 1872.

Two years have elapsed since the qualification of the executors, and they have wholly failed to settle with the legatees and heirs-at-law of the testator.

W. S. Teague is indebted to said estate in the sum of five hundred dollars, and the other executor, Moses Teague, is indebted to said estate, in about the sum of eight hundred dollars. The whole amount of property, money or other effects that have come into their hands besides the indebtedness of said executors, amounts to about twenty-one hundred dollars. The executors own no property over and above their homesteads, and they actually have less property than is exempted as a homestead.

The testator died seized and possessed in fee simple of several tracts of land, to wit : one in the county of Alexander, on Middle Little river, one tract known as the " Home tract," containing about three hundred acres ; one known as the " Sal Self " tract, containing about eighty acres ; one known as the " Austin tract," containing about four hundred acres, and a tract on the waters of Glade creek, containing sixty acres.

The court was requested to construe the will with regard to the following points :

1. Did the testator devise that the remainder of the " Sal Self tract " and the " 80 acre entry " should be sold and divided amongst his heirs other than Nancy Austin's heirs. What land does the testator intend to include by the clause, " I will and bequeath all the rest of my tract of land that I now live on, known as the Newland land, to my three youngest daughters, Sophronia J. Teague, Elizabeth Montgomery and Amanda L. Teague ?"

2. What does the testator mean by " my other heirs " in the clause, " I also will that all the rest of my land, &c., be sold, &c., and the balance to be divided amongst my other heirs, &c."

3. What amount of provisions is the widow to receive by the clause, " I will and bequeath to my beloved wife one year's plentiful provisions?"

4. What is the meaning of the clause, " I will that my three sons, Vandiver, William and Moses, shall account to my estate what they owe me, without interest, and have three hundred and fifty dollars each out of the money," when a large amount of the notes are barred by the statute of limitations ?

That the testator having been twice married had the following children by his first wife, to-wit: Nelly, wife of William Teague, Vandiver Teague, Elmira Teague, wife of J. J. Teague, W. S. Teague, Moses Teague, and Nancy Austin, who is now dead. By his second wife he had the following

children, to-wit : Sophronia J. Teague, Elizabeth, wife of A. Montgomery and Amanda, wife of J. C. Bell.

The complaint prayed judgment that said executors give bond and security for the faithful discharge of their duties, and that they account and settle with the devisees and legatees under said will, &c.

The defendants filed their several answers, which are not necessary to be stated.

A trial by jury was waived and the court found the following facts :

That the three tracts of land mentioned in the pleadings as the " Home tract," " Sal Self tract," and " 80 acre entry " were at the time of the death of one Benjamin Newland, some thirty years ago, a part of his real estate. After his death partition was made of said real estate among his heirs at law, in which partition the three tracts aforesaid fell to the share of Washington Newland. Soon thereafter Washington Newland died, and the said land was sold by his executors, one Bennett becoming the purchaser. Bennett never occupied the land, but soon after his purchase (which in fact seems to have been made for the testator) he conveyed it to the testator who immediately took possession thereof and lived upon it to the time of his death in 1872. These lands adjoin each the other and were sold by the executors of Washington Newland to Bennett as a whole, as did Bennett to the testator. The part known as the " Sal Self " tract having been entered in the name of J. H. Newland, a son of Benjamin Newland, it was found after the sale that the title thereto was in him, and he conveyed his interest thereto to Bennett for the nominal consideration of one dollar. The said Benjamin continued to cultivate the " Home tract " and the " 80 acre entry " until his death as one farm, the " Sal Self " tract being wild mountain land, has never been cleared or cultivated. The " 80 acre entry " was made by the said Benja

min, after he purchased the "Home tract" and was called by him and others the "80 acre entry."

A woman named Sal Self had a cabin which she occupied for some time on the "Sal Self" tract before the same was entered, though she nor any one else had a title thereto before the same was entered by J. H. Newland. All these lands were known as, and called by the testator and his family, and the people of the neighborhood, the "Newland lands," the testator owning other lands called the "Austin place" and the "Glade Creek place."

After making his will, the testator made deeds to his three youngest daughters, who were his only children by his second wife, to all of what is called the home tract and a small portion of the "Sal Self" tract, reserving to himself a life estate therein.

Upon this state of facts the court was of the opinion that the "80 acre entry" and the "Sal Self" tract were included in that clause of the will in which the testator declares: "I also will and bequeath all the rest of my tract of land that I now live on, known as the Newland land, to my three youngest daughters, Sophronia J. Teague, Elizabeth A. Montgomery and Amanda L. Teague, to be equally divided."

The court was also of the opinion that the money arising from the lands included in the residue, which were to be sold by the executors, was to be divided among all the heirs of the testator *per stirpes* except the heirs of Elizabeth Austin, who are first to have fifty dollars each.

The court was also of the opinion that though some of the debts due the testator's estate by some of the devisees and legatees may be barred by the statute of limitations, still they are debts and must be satisfied, to enable the parties owing them to claim under the will.

By consent of parties three commissioners were appointed by the court, to lay off and assign to the wife of the testator a year's provisions as provided in the will.

It was further ordered by the court that the clerk state an account of the estate in accordance with the opinion of the court.

From this judgment the plaintiffs appealed.

*M. L. McCorkle* and *Smith & Strong*, for appellants.
*Armfield* and *Johnstone Jones*, contra.

SETTLE, J. This action was brought to obtain a construction of the will of Vandiver Teague, Sr., and was submitted to his Honor, a jury being waived, to find the facts and declare the law thereon. The first question arises upon the following provisions of the will: " I will and bequeath to my beloved wife, Mary B. Teague, forty acres of land, including the house and building, during her natural lifetime, then to be equally divided between my three youngest daughters, to-wit, Sophronia J. Teague, Elizabeth A. Montgomery and Amanda F. Teague. * * * I also will and bequeath all the rest of my tract of land that I now live on, known as the Newland land, to my three youngest daughters, Sophronia J. Teague, Elizabeth A. Montgomery and Amanda L. Teague, to be equally divided."

We concur with his Honor, that the Newland land, embracing the home place, the "Sal Self" place, and the eighty acre entry, constitute one and the same tract or plantation, having been used as such for thirty or forty years, and conveyed as such to the testator, and that the whole passed to his three youngest daughters, subject to the life estate of their mother, in forty acres. The fact that the testator made deeds to his three youngest daughters for portions of this land, subsequent to the execution of his will, cannot vary the construction of of the will; and indeed there is nothing in the circumstances attending this case, inconsistent with the idea that the testator intended the portion not conveyed by deeds, to go to his three youngest daughters, under the provisions of his will, which have been quoted.

After disposing of his home place, the testator turns his attention to his other lands, and directs "that all the rest of my land, with the exception of the land where my son, William S. Teague, lives, that land the said William must pay for what I paid without interest, then my executors to make him a deed, to be sold and my daughter Nancy Austin's heirs to have fifty dollars each, the balance to be divided among my other heirs." The testator draws a distinction between his grand children, "Nancy Austin's heirs," and his own children, whom he designates as "my heirs."

But the question is, who are embraced in the description "my other heirs"? We think it evident, that the testator having just made provision, in land, for his three youngest daughters, intended that they should be excluded from all benefit under this clause of the will, which deals exclusively with the fund arising from the sale of land. Nancy Austin's children are clearly excluded from all benefit under the will, save the legacy of fifty dollars to each of them, to be paid out of the fund arising from the sale of land.

The mention of William S. Teague's name in the clause under consideration, was neither for the purpose of providing for, nor excluding him, but only to direct that he should pay for the land on which he lived, and thereby increase the land fund, out of which he is to draw as one of "my other heirs," meaning other than the three youngest daughters already provided for. The testator then turns his attention to his personal estate, and after giving directions as to the payment of debts due from his three sons, &c., concludes, "all the rest of my property to be sold and equally divided among my nine heirs, my wife an equal heir."

If we leave out of view Nancy Austin's children, the meaning of the testator is apparent. The money arising from the collection of his debts, (other than the debt due from his son William for land, which goes into the land fund,) and from the sale of his personal property, not specifically disposed of,

is to create a fund in which his eight children and his wife, filling the description, "my nine heirs, my wife an equal heir," are to share equally.

We concur with his Honor, that although some of the debts due from his sons to the testator may be barred by the statute of limitations, they must be paid before the sons owing them can claim any benefit under the will.

This disposes of all the questions worthy of attention.

Let this opinion be certified, to the end that the court below may proceed according to law.

PER CURIAM.                 Judgment accordingly.